IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CHRISTINE RITCHIE, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | *   Civil Action No. 8:23-cv-03115-PX |
| LAVIN CEDRONE GRAVER BOYD & DISPIO, *et al.*, | * |
| | * |
| Defendants. | * |
| | *** |

## MEMORANDUM OPINION

On February 2, 2024, pro se Plaintiff Christine Ritchie ("Ritchie") filed an Amended Complaint against nineteen individuals, corporations, hospitals, police departments and a sheriff's department. ECF No. 47. The Amended Complaint is sprawling. The events span more than two decades and take place in Maine, Maryland, New Jersey, and Pennsylvania.[1] *Id.* Pending before the Court are twelve motions to dismiss filed by the named Defendants. ECF Nos. 56, 57, 58, 59, 64, 65, 68, 69, 71, 79, 81, and 104. For each, the Clerk notified Ritchie of her right to respond. ECF Nos. 60, 61, 62, 63, 66, 67, 74, 75, 76, 82, 83, and 105. Ritchie filed no oppositions and the time for doing so has passed. No hearing is necessary. *See* Loc. R. 105.2., 105.6. For the reasons stated below, the Amended Complaint is dismissed entirely.

I.   **Background**

Ritchie first filed suit on November 14, 2023, against all Defendants for violations of "the United States Constitution and Bill of Rights regarding human and civil rights as well as federal

---

[1] The Defendants are Lavin Cedrone, Graver, Boyd & Disipio P.C. ("Lavin Cedrone"); Eleanor Ritchie ("Eleanor"); Meta; LinkedIn; Dr. Andrew Phan ("Dr. Phan"); Dr. Kathryn Wadland ("Dr. Wadland"); Dr. Jeffrey Barkin ("Dr. Barkin"); Yarmouth Police Department; Maine Medical Center; Spring Harbor Hospital; Taymil Partners LLC ("Taymil LLC"); Maine District Court; Frederick Hospital; Frederick Police Department; MedStar St. Mary's Hospital; St. Mary's County Sherriff's Department; Martha Keen ("Keen"); Michael Large ("Large") and "Does 1-100." *Id.*

statutes regarding wrongful imprisonment, freedom from torture, due process of law and attorney, reckless endangerment, and obstruction of justice." ECF No. 1. She also alleged common law claims of invasion of privacy, harassment, wrongful termination, retaliation, interference with her right to counsel, slander, medical malpractice, negligence, and intentional infliction of emotional distress. *Id.* Because Ritchie proceeds in forma pauperis, the Court screened the Complaint for sufficiency pursuant to 28 U.S.C. § 1915(e)(2)(B). *See Randolph v. U.S.*, No. JFM-14-3609, 2014 WL 11460887, at *1 (D. Md. Dec. 12, 2014). By memorandum order dated January 8, 2024, the Court concluded that the Complaint failed to state a claim against any of the named Defendants. The Court gave Ritchie one opportunity to amend the Complaint and advised her of the minimum pleading requirements. ECF No. 10.

On February 2, 2024, Ritchie filed an Amended Complaint that largely mirrors the original Complaint. ECF No. 47. One improvement, however, is that the Amended Complaint identifies the causes of action – nineteen – against specific Defendants.

Count One accuses Ritchie's former employer, the Pennsylvania law firm of Lavin Cedrone, of "permitting" workplace harassment against Ritche in 2002, and of wrongfully terminating her in violation of 42 U.S.C. § 2000-e *et seq*. (Title VII). The firm is also accused of negligently failing to protect Ritchie from slanderous comments made by her coworker, Martha Keen, and from Keen's "invasion" of Ritchie's privacy. ECF No. 47 ¶¶ 1–58.

Count Two alleges that Ritchie's mother, Eleanor, slandered and inflicted emotional distress on Ritchie in connection with her daughter's wrongful termination. *Id.* ¶¶ 59–62. Counts Three and Four accuse social media platforms, Meta and LinkedIn, of allegedly failing to protect Ritchie from unspecified slanderous remarks leveled at Ritchie by Keen between 2008 and 2015. *Id.* ¶¶ 63–76.

Counts Five through Seven tack in a wholly different direction. Each Count separately accuses three doctors who practice in Maine – Drs. Phan, Wadland and Barkin – of medical malpractice and intentional infliction of emotional distress for discontinuing Ritchie's treatment, referring Ritchie to a psychiatrist, and misdiagnosing her. ECF No. 47 ¶¶ 77–90. Also, regarding events in Maine, Count Eight proceeds against the Yarmouth Police Department for unconstitutionally detaining and transporting Ritchie to the Maine Medical Center "against her will." *Id.* ¶¶ 91–94. Counts Nine and Ten fault two hospitals, the Maine Medical Center and Spring Harbor Hospital, in connection with Ritchie's 2009 treatment. Maine Medical Center is accused of committing malpractice in diagnosing Ritchie with psychosis and falsely imprisoning her, *id.* ¶¶ 95–97, and Spring Harbor Hospital for providing "harmful" medications to her. *Id.* ¶¶ 98–102.

Counts Eleven and Twelve concern Ritchie's eviction from her apartment in Maine some time in 2020. Count Eleven sues Taymil LLC, a Delaware corporation, for wrongful eviction, ECF No. 47 ¶¶ 103–107, and Count Twelve faults the Maine District Court for "[denying] Plaintiff [an] attorney [and] forcing plaintiff to accept a court appointed guardian ad litem" in a landlord-tenant dispute. *Id.* ¶¶ 108–110.

Count Thirteen and Fourteen accuse the "Frederick Police Department" of unconstitutionally seizing Ritchie in 2022 when unidentified police officers placed handcuffs on Ritchie during transport to Frederick Health Hospital. ECF No. 47 ¶¶ 111–113. Ritchie also alleges that Frederick Health Hospital committed malpractice when she had been held in the psychiatric ward without access to counsel. *Id.* ¶¶ 114–116. Similarly, Counts Fifteen through Seventeen allege that sometime in 2022, the St. Mary's County Sheriff's Department also

3

unconstitutionally detained Ritchie during transport to the local hospital, and MedStar St. Mary's Hospital misdiagnosed Ritchie and held her against her will.  *Id.* ¶¶ 117–125.

Count Eighteen avers that in the 2000s, Keen slandered Ritchie and violated her privacy. ECF No. 47 ¶¶ 26–138.  And last, Count Nineteen summarily accuses Michael Large of a wide variety of wrongs spanning two decades, and include claims of attempted murder, theft, fraud, identity theft, and harassment.  *Id.* ¶¶ 139–152.

The Amended Complaint suffers from a host of deficiencies. For thirteen Defendants, the Court lacks personal jurisdiction.  The claims against the remaining Defendants lack necessary factual detail to make them plausible.  The Court first turns to those over whom the Court lacks personal jurisdiction.

## II.     Lack Of Personal Jurisdiction

The existence of personal jurisdiction over a defendant is a necessary predicate to adjudicating civil claims brought against that defendant.  *See Cleaning Auth., Inc. v. Neubert*, 739 F. Supp. 2d 807, 811 (D. Md. 2010) (citing *Combs v. Bakker*, 886 F. 2d 673, 676 (4th Cir. 1989)).  At the pleading stage, the plaintiff need only make a prima facie showing of personal jurisdiction.  *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).  To ascertain whether personal jurisdiction exists, the Court views the facts alleged in the complaint as true and most favorably to the plaintiff.  *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014) (quoting *Combs*, 886 F.2d at 676).

The Court may exercise personal jurisdiction over any defendant who is "at home" in the forum state, or otherwise "in the manner provided by state law" pursuant to the forum state's long arm statute.  *Carefirst of Md., Inc.*, 334 F.3d at 396 (citing Fed. R. Civ. P. 4(k)(1)(A)); *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).  The former is termed "general jurisdiction,"

while the latter is "specific jurisdiction."

The Amended Complaint alleges that the named Defendants who challenge the court's personal jurisdiction are domiciled in Pennsylvania, California, Maine, and New Jersey. ECF No. 47 at 1–2. Nothing in the Amended Complaint makes plausible their systematic ties to Maryland. The Court cannot conclude that Defendants are "at home" in this state from the face of the pleading. Thus, the Court lacks general personal jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (U.S. 2011); *Midtown Pers., Inc. v. Dave*, No. PWG-13-3493, 2014 WL 3672896, at *5 (D. Md. July 22, 2014).

Alternatively, specific jurisdiction is proper where (1) jurisdiction is authorized by the forum state's long-arm statute and (2) comports with the due process requirements inherent in the Fourteenth Amendment of the United States Constitution. *Christian Sci. Bd. of Dir. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). Maryland's long-arm statute is co-extensive with federal due process limits and so the two prongs may be analyzed together. *Mackey v. Compass Mktg., Inc.*, 391 Md. 117, 141 n.6 (2006). According to Maryland's long-arm statute, the Court may exercise personal jurisdiction over a defendant who,

> (1) Transacts any business or performs any character of work or service in the State;
> (2) Contracts to supply goods, food, services, or manufactured products in the State;
> (3) Causes tortious injury in the State by an act or omission in the State;
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
> (5) Has an interest in, uses, or possesses real property in the State;
> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Md. Code, Cts. & Jud. Proc. § 6-103.

When viewing the Amended Complaint most favorably to Ritchie, nothing supports the exercise of specific personal jurisdiction over any of the Defendants domiciled outside Maryland. Ritchie alleges that Lavin Cedrone, a firm based in Pennsylvania, fired her over 20 years ago, and her coworker Keen slandered Ritchie in relation to the termination. ECF No. 47 ¶¶ 53–57, 126–138. No facts suggest that the Law Firm does business in Maryland, or that any of the alleged misconduct involving it or Keen took place in Maryland. *Id.*

Additionally, Ritchie alleges that the Defendant Drs. Phan, Wadland, and Barkin, and the related Maine hospitals committed all manner of malpractice in Maine, and alleges Defendants Taymil LLC and the Maine District Court participated in her eviction from her Maine apartment. No. 47 ¶¶ 77–110. As to Meta and LinkedIn, the complaint allegations are so barebones that the Court cannot discern where the alleged misconduct took place. *Id.* ¶¶ 63–76. Certainly nothing suggests that any named Defendant had done anything, wrongful or otherwise, involving Ritchie in Maryland.

The same can also be said about Defendant Large. The Amended Complaint accuses Large of committing a series of discrete acts spanning twenty years in four different states – Maine, New Jersey, Washington, and Delaware. No. 47 ¶¶ 140-152. Large has supposedly "attempt[ed] to harm plaintiff by causing a power surge," "interfere[d] with the function of a Uhaul," hacked electronic devices, and spied on Ritchie. *Id.* But nothing suggests that Large ever availed himself of this forum in any manner prescribed by general or specific personal jurisdiction.

Because the Court lacks specific personal jurisdiction against the lion's share of the named Defendants, Counts One, Three, Four, Five, Six, Seven, Eight, Nine, Ten, Eleven, Twelve, Eighteen, and Nineteen must be dismissed.

### III.     Remaining Claims

Five of the remaining claims, Counts Thirteen, Fourteen, Fifteen, Sixteen, and Seventeen, concern Maryland based defendants Frederick Health Hospital, the Frederick Police Department, St. Mary's County Sheriff Department, and Medstar St. Mary's Hospital.  ECF No. 47 ¶¶ 111–125.  For the two law enforcement agencies, the claims broadly assert "unconstitutional" detention brought pursuant to 42 U.S.C. § 1983.  *Id.* ¶¶ 111–113, 117–119.  Likewise, the hospitals are both similarly accused of malpractice and wrongful detention.  *Id.* ¶¶ 114–116, 123–125.

To assess the sufficiency of the claims under Rule 12(b)(6), the Court affords the Amended Complaint a charitable reading to ensure that potentially meritorious claims proceed.  *See Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980).  Factual allegations are accepted as true and viewed most favorably to the nonmovant.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  And "[e]ven in the case of pro se litigants, [district judges] cannot be expected to construct full blown claims from sentence fragments."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (1985).

As for the claims of unconstitutional detention against the Frederick Police and St Mary's County Sheriff's Departments, the claims fail because neither Defendant is a "person" subject to suit under 42 U.S.C. § 1983.  Section 1983 extends liability for constitutional violations only to persons acting "under color of law."  42 U.S.C. § 1983 ("[e]very person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects, or causes to be subjected, any ... person ... to the deprivation of any rights[.]").  *Gellert v. Distr. Ct. of Md.*, No. PX-20-3004,

2021 WL 37659, at *2 (D. Md. Jan. 5, 2021) (person under 1983 must be an individual or bodies politic or corporate).  Departments and agencies, such as Defendants, are not "persons" subject to suit.

Although in certain circumstances, liability may extend to municipalities, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 & n.55 (1978), the complaint must plausibly aver that the alleged violation arose out of an unconstitutional policy, practice, or custom giving rise to the alleged constitutional injury.  *See Owens v. Balt. City State's Attys Off.*, 767 F. 3d 379, 402 (4th Cir. 2014).  No such facts are pleaded here.  Accordingly, the claims fail as a matter of law. Counts Thirteen and Fifteen are dismissed.

Regarding the medical malpractice claims against the Maryland based hospitals, the Health Care Malpractice Claims Act ("HCMCA"), Md. Cts. & Jud. Pro. Art. § 3-2A-02(a)(1), requires the plaintiff to exhaust administrative remedies prior to filing suit.  *Id.* § 3-2A-02(a)(2). *See also Jones v. Bagalkotakar*, 7750 F. Supp. 2d 574, 577 (D. Md. 2010).  Absent exhaustion, the claims simply cannot proceed in this Court.  Because no facts in the Amended Complaint make plausible that Ritchie has complied with the HCMCA, Counts Fourteen, Sixteen, and Seventeen are also dismissed.[2]

Last, Count Two alleges that Eleanor "assisted" in Ritchie's termination from Lavin Cedrone, when she "ke[pt] Plaintiff unemployed" by giving her money, and abetted Keen in slandering Ritchie.  ECF No. 47 ¶¶ 59–62.  The Court cannot discern a legally cognizable cause of action against Eleanor.  And to the extent one does exist, the events surrounding Ritchie's wrongful termination from Lavin Cedrone, took place over twenty years ago.  Thus, the claims appear time barred.  *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101 (In Maryland, "[a] civil

---

[2] Nor does the Amended Complaint allege any facts that could nudge a wrongful detention claim against the hospitals from possible to plausible.  *See Iqbal*, 556 U.S. at 678-79.

action shall be filed within three years from the date it accrues). *See also Arroyo v. Board of Educ. of Howard Cty.*, 381 Md. 646, 672 (2004) (three-year limitations for wrongful termination); *Higginbotham v. Public Serv Com'n of Md.*, 412 Md. 112, n. 5 (2009) (one-year limitations for libel and slander).

## IV.    Conclusion

Regrettably, Ritchie has suffered from a decades-long series of personal challenges that she has laid bare in the Amended Complaint. But even affording the Amended Complaint a most generous reading, none of the allegations against the Defendants can proceed, either because the Court lacks personal jurisdiction over the Defendants, or the claims fail as a matter of law. Moreover, because the Court has permitted Ritchie one opportunity to amend the Complaint with no material changes, nothing suggests that permitting any further amendment would lead to a different result.[3] Accordingly, the claims dismissed for insufficiency (Counts Two, and Thirteen through Seventeen) will be dismissed with prejudice. The remaining claims over which the Court lacks personal jurisdiction, and have necessarily not been reviewed on the merits, will be dismissed without prejudice.

A separate Order follows.

Date:  August 28, 2024                                        /x/
                                                Paula Xinis
                                                United States District Judge

---

[3] Without leave of the Court, and in violation of Rule 15(a)(2) and Local Rule 103.6.a, Ritchie filed a Second Amended Complaint on August 23, 2024. Accordingly, the Court has returned the pleading to Ritchie. But even if the Second Amended Complaint were accepted and reviewed, it appears no more plausible than the first two. Thus, had Ritchie moved for leave to amend, the motion would likely have been denied as futile. *Katyle v. Penn Nat. Gaming, Inc.* 637 F. 3d 462, 471 (4th Cir. 2011).